IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>                v.<br><br>VALEDA S. MCREYNOLDS,<br>BENEFICIAL FINANCIAL I INC., AS<br>SUCCESSOR IN INTEREST TO<br>BENEFICIAL MORTGAGE CO. OF<br>KANSAS, INC., and LVNV FUNDING,<br>LLC,<br><br>        Defendants. | Civil No. 19-4098 |

## **COMPLAINT**

COMES NOW the United States of America, by Stephen R. McAllister, United States Attorney for the District of Kansas, and Sarah Burch Macke, Assistant United States Attorney, and for its cause of action alleges:

1.      This is a civil action for foreclosure of a Mortgage brought by the United States of America under the provisions of 28 U.S.C. § 1345.

2.      Service may be made upon Defendants in the following manner:

a.      Defendant Valeda S. McReynolds may be served the Summons and a copy of the Complaint at 317 Colleen Drive, Gardner, KS 66030, within the jurisdiction of this Court.

b.      Defendant Beneficial Financial I Inc., as Successor in Interest to Beneficial Mortgage Co. of Kansas, Inc., whose business status is currently listed as withdrawn with the Kansas Secretary of State, may be served by delivering the Summons and a copy of the Complaint to the Kansas Secretary of State,

Scott Schwab, at Memorial Hall, 1st Floor, 120 SW 10th Avenue, Topeka, Kansas 66612, pursuant to K.S.A. § 60-604(f), within the jurisdiction of this Court.

c.      Defendant LVNV Funding, LLC may be served by delivering the Summons and a copy of the Complaint to its Registered Agent, Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614, within the jurisdiction of this Court.

3.      Defendant Valeda S. McReynolds and deceased borrower Valeda M. Spencer executed and delivered to Plaintiff United States, acting through the Rural Housing Service, United States Department of Agriculture, a promissory note on November 24, 1993, in the principal amount of $73,500.00, together with interest at the rate of 6.5000 percent (6.5000%) per annum on the unpaid balance.  As consideration for this note, Plaintiff United States made a Rural Housing loan to Defendant Valeda S. McReynolds and deceased borrower Valeda M. Spencer, pursuant to the provisions of Title V of the Housing Act of 1949 (42 U.S.C. § 1471, *et seq*.).  A true and correct copy of the Promissory Note is attached as Exhibit A.

4.      On November 24, 1993, to secure repayment of the indebtedness, Defendant Valeda S. McReynolds and deceased borrower Valeda M. Spencer executed and delivered a purchase-money security interest in the form of a real estate mortgage upon real property commonly known as 317 Colleen Drive, Gardner, Kansas 66030 and located in Johnson County, Kansas, within the jurisdiction of this Court, described as follows:

Lot 31, Meadows 2nd, a subdivision in the City of Gardner, Johnson County, Kansas.

This real estate mortgage was filed on November 24, 1993, in the office of the Register of Deeds of Johnson County, Kansas, in Book 4158 at Pages 58-61, which was later administratively

2

corrected and rerecorded on April 10, 1997 in Book 5156 at Pages 577-580.  A true and correct copy of the Mortgage is attached as Exhibit B.

5.     On November 24, 1993, Defendant Valeda S. McReynolds and deceased borrower Valeda M. Spencer executed a Subsidy Repayment Agreement.  The recapture of any and all amounts granted under this Agreement are secured by the Real Estate Mortgage described above pursuant to the Housing Act of 1949, as amended, 42 U.S.C. § 1490a, and the implementing regulations, 7 C.F.R. § 3550.162.  As of March 19, 2019, there was due the total amount of $51,783.64.  This amount is to be recovered *in rem* only, and only after recovery of the principal (including advances and other recoverable costs) and accrued interest due on the Promissory Note through the date of sale of the real property. A true and correct copy of the Subsidy Repayment Agreement is attached as Exhibit C.

6.     This account was administratively reamortized effective September 24, 2014, following a moratorium in effect from August 24, 2012, to July 24, 2014, pursuant to 7 C.F.R. § 3550.207(c).  The reamortized amount (unpaid principal plus interest) became the principal debt of $65,403.70 with interest at 6.5000 percent per annum.  A true and correct copy of the unsigned Reamortization Agreement is attached as Exhibit D.

7.     Plaintiff United States is the owner and holder of the liability and security documents set out above, attached as Exhibits A, B, C and D.

8.     Valeda M. Spencer died on December 29, 2000. Valeda M. Spencer and Valeda S. McReynolds had held title as joint tenants with right of survivorship. Valeda S. McReynolds now holds title in fee simple.

9.     Defendant Valeda S. McReynolds failed to pay installments of principal and interest when due in violation of the liability and security documents set out above.  Plaintiff

United States elected to exercise its option to declare the entire unpaid principal balance plus interest to be immediately due and payable and made demand for these amounts.

10.     Defendant Valeda S. McReynolds filed Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Kansas in Case No. 19-20297.  Defendant Valeda S. McReynolds received a discharge on June 27, 2019.  Doc. 24.

11.     The amount due on the promissory note is principal in the amount of $67,921.18 (including unpaid principal of $61,213.89, escrow replenish of $4,016.81, agency title report fees of $300.00, escrow fees of $2,314.00, and late fees of $76.48) as of March 19, 2019; plus interest in the amount of $14,456.84 (including interest on principal of $13,866.06 and interest on advances of $590.78) accrued to March 19, 2019; plus interest accruing thereafter at the daily rate of $11.6698 (including daily interest on principal of $10.9011 and daily interest on advances of $0.7687) to the date of judgment; plus administrative costs of $5.00 (including lis pendens filing fee of $5.00) pursuant to the promissory notes and mortgage; plus filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2); plus interest thereafter at the rate set forth in 28 U.S.C. § 1961; plus court costs and the costs of this action presently and in the future incurred. Plaintiff United States is also owed the amount of $51,783.64 for interest credit or subsidy subject to recapture; plus interest after the date of judgment at the rate set forth in 28 U.S.C. § 1961; and foreclosure of all Defendants' interests in the subject real estate.

12.     No other action has been brought to recover these sums.

13.     Plaintiff United States has completed all loan servicing requirements of Title V of the Housing Act of 1949 (42 U.S.C. § 1471, *et seq.*) and implementing rules and regulations.

14.     The following Defendants may claim an interest in the real property:

4

a.     Defendant Beneficial Financial I Inc., as Successor in Interest to Beneficial Mortgage Co. of Kansas, Inc. may claim a mortgage lien interest against the real property pursuant to a mortgage dated April 24, 2001, and recorded in the Johnson County Kansas Office of Register of Deeds on May 14, 2001, in Book 7029 at Page 938.

b.     Defendant LVNV Funding, LLC may claim a judgment lien interest against the real property pursuant to a judgment entered in Case No. 17LA01698 in the District Court of Johnson County, Kansas.

15.     The indebtedness due Plaintiff United States is a first and prior lien on the property described above.

16.     The interests of all Defendants are junior and inferior to the interests of Plaintiff United States.

17.     By execution of the mortgage; Defendant Valeda S. McReynolds agreed that Plaintiff United States, acting through the Rural Housing Service, would not be bound by any present or future State laws allowing for any right of redemption or possession of the real estate following any foreclosure sale. Exhibit B, ¶ 19.  Therefore, Defendant Valeda S. McReynolds waived all rights of redemption and there is no right of redemption for any party, including lien creditors.

Plaintiff United States demands *in rem* judgment of foreclosure  in the amount of $67,921.18 (including unpaid principal of $61,213.89, escrow replenish of $4,016.81, agency title report fees of $300.00, escrow fees of $2,314.00, and late fees of $76.48) as of March 19, 2019; plus interest in the amount of $14,456.84 (including interest on principal of $13,866.06 and interest on advances of $590.78) accrued to March 19, 2019; plus interest accruing thereafter at the daily

rate of $11.6698 (including daily interest on principal of $10.9011 and daily interest on advances of $0.7687) to the date of judgment; plus administrative costs of $5.00 (including lis pendens filing fee of $5.00) pursuant to the promissory notes and mortgage; plus filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2); plus interest thereafter at the rate set forth in 28 U.S.C. § 1961; plus court costs and the costs of this action presently and in the future incurred. Plaintiff United States further demands *in rem* judgment in the amount of $51,783.64 for interest credit or subsidy subject to recapture; plus interest after the date of judgment at the rate set forth in 28 U.S.C. § 1961.

Plaintiff United States further demands that its Mortgage be declared a first and prior lien on the real property and that such advances as Plaintiff United States may be authorized and required to pay for insurance premiums, real estate taxes, title fees, or other costs necessary to protect the security during the pendency of this proceeding be allowed as a first and prior lien on the security.

Plaintiff United States further demands that it be granted *in rem* judgment foreclosing its mortgage on the real property and foreclosing the interests of all Defendants, and that all right, title, and interest in and to the real property of all Defendants, and of all persons claiming by, through or under these Defendants be decreed to be junior and inferior to the Mortgage of Plaintiff United States and be absolutely barred and foreclosed.

Plaintiff United States further demands that the real property be sold at public sale to the highest bidder, in accordance with 28 U.S.C. §§ 2001-2002, inclusive, with no right of redemption in any party, and that the sale be subject to any unpaid real estate taxes, special assessments and easements of record.

Plaintiff United States further demands that it may bid up to the full amount due it at the time of the sale without paying funds into the Court, which bid shall satisfy the requirement for a cash sale, and that the sale proceeds be applied in the following order:

(1)    Filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2);

(2)    The costs of this action and the foreclosure sale;

(3)    The interest accruing on Plaintiff United States' *in rem* judgment of foreclosure;

(4)    Plaintiff United States' *in rem* judgment of foreclosure;

(5)    The interest accruing on Plaintiff United States' *in rem* judgment for interest credit or subsidy subject to recapture;

(6)    Plaintiff United States' *in rem* judgment for interest credit or subsidy subject to recapture; and,

(7)    Any remaining balance should be held by the Clerk of the District Court to await the Court's further order.

Plaintiff United States further demands that the judgment granted it in the Order and Judgment be the final judgment of this Court.

Plaintiff United States further demands that if the grantee named in the United States Marshal's Deed, or the grantee's assigns, are denied possession of the real property, a Writ of Assistance issue out of this Court to the United States Marshal for the District of Kansas, upon application of the grantee or grantee's assigns, ordering and directing the United States Marshal to place the applicant in full, complete, and peaceful possession of the real property.

Respectfully submitted,

STEPHEN R. McALLISTER
United States Attorney
District of Kansas

s/ Sarah Burch Macke
SARAH BURCH MACKE
Assistant United States Attorney
Ks. S.Ct. No. 25948
290 Federal Bldg.
444 SE Quincy Street
Topeka, Kansas 66683
PH: (785) 295-2850
FX: (785) 295-2853
Email: sarah.macke@usdoj.gov
Attorneys for Plaintiff

## REQUEST FOR PLACE OF TRIAL

Plaintiff United States of America hereby requests that trial of the above-entitled matter be held in the City of Topeka, Kansas.

s/ Sarah Burch Macke
SARAH BURCH MACKE
Assistant United States Attorney

USDA-FmHA
Form FmHA 1940-16
(Rev. 4-91)

**PROMISSORY NOTE**

6 DEC 1993

| TYPE OF LOAN |
|---|
| RH 502 |

| STATE |
|---|
| KANSAS |
| COUNTY |
| JOHNSON |
| CASE NO |

Date _____ NOVEMBER 24, _____ 19__93__

**FOR VALUE RECEIVED,** the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration,

United States Department of Agriculture, (herein called the "Government") at its office in _100 N ANGELA STREET,_

_SUITE 2, PAOLA, KS 66701_

THE PRINCIPAL SUM OF ___ SEVENTY-THREE THOUSAND FIVE HUNDRED AND NO/100---------------------

DOLLARS ($ _____ 73,500.00 _____ ), plus INTEREST on the UNPAID PRINCIPAL of

_SIX AND ONE HALF_ _____ PERCENT ( __6.5000__ %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I.   Principal and Interest payments shall be deferred. The interest accrued to _____, 19____

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized Installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $ _____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.   Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each _____ beginning on _____ , 19____, through _____ , 19____,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☒ III.   Payments shall not be deferred. Principal and Interest shall be paid in ___396___ installments as indicated in the box below:

| |
|---|
| $ __452.00__ on ____ DECEMBER 24, ____ , 19 _93_ , and |
| $ __452.00__ thereafter on the __24th__ of each __MONTH__ until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and PAYABLE _THIRTY-THREE_ ( __33__ ) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments. |

FmHA 1940-16 (Rev. 4-91)

Exhibit A

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

SUBSIDY REPAYMENT AGREEMENT: Borrower agrees to the repayment (recapture) of subsidy granted in the form of interest credits. Subsidy will be repaid when the borrower's account is settled by sale of the security property, refinancing or payment in full and will be calculated in accordance with regulations in effect at the time of settlement. Recapture is based on property appreciation and can equal all, some or none but never exceed the amount of subsidy received.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

WARNING: Failure to fully disclose accurate and truthful financial information may result in the termination of program assistance currently being received, and the denial of future program assistance under USDA's Debarment regulations, 7 CFR Part 3017.

Presentment, protest, and notice are hereby waived.

Presentment, protest, and notice are hereby waived.

_Valeda S McReynolds_ (SEAL)

VALEDA S. MC REYNOLDS _(BORROWER)_

_Valeda M. Spencer_ (SEAL)

VALEDA M. SPENCER _(CO-BORROWER)_

317 COLLEEN DRIVE

GARDNER, KS 66030

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 73,500.00 | 11-24-93 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 73,500.00 | 11-24-93 |

COLUMBIAN NATIONAL TITLE INSURANCE
OF JOHNSON COUNTY, INC.
USDA-Ra-KATHRYN E. BOX 34
Form F-SA-6817 KS-KS60051-0038
(Rev. 3-90)   782-0155

Position 5

63,015   2327524

REAL ESTATE MORTGAGE FOR KANSAS

Refile
2692875

THIS MORTGAGE is made and entered into by __VALEDA S. MC REYNOLDS, A SINGLE PERSON__
AND VALEDA M. SPENCER, A SINGLE PERSON

residing in __JOHNSON__ _____ County, Kansas, whose post office address is
030
__317 COLLEEN DRIVE, DESOTO   GARDNER__ VM & MS _____, Kansas __66018__,

herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States
Department of Agriculture, herein called the "Government," and

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption
agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower,
is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Govern-
ment upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| NOVEMBER 24, 1993 | $73,500.00 | 6.5000% | NOVEMBER 24, 2026 |

THIS DOCUMENT IS BEING RE-RECORDED TO CORRECT AN ERROR IN THE ADDRESS LINE.
AS ORIGINALLY FILED IT READ 317 Colleen Drive, DeSoto, KS
IT SHOULD READ 317 Colleen Drive, Gardner, KS

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument
may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the
payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949
or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the
Government, or in the event the Government should assign this instrument without insurance of the note, this instrument
shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of
the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage
to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower
by the Government pursuant to 42 U.S.C. §1490a or any amounts due under any Shared Appreciation Agreement/Recapture
Agreement entered into pursuant to 7 U.S.C. 2001.

And this instrument also secures future advances made to anyone herein called borrower under a note or notes covering
loans made or insured under the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949 or
any other statutes administered by the Farmers Home Administration, for the total principal indebtedness of the original
future loans and advances subject to the same terms and conditions regarding the assignment of said notes as hereinabove
provided, and all references in this instrument to the "note" shall be deemed to include future notes and advances.

NOW, THEREFORE, in consideration of the loan(s), and as security for future loans pursuant to the Consolidated
Farm and Rural Development Act or Title V of the Housing Act of 1949 or any other statutes administered by the Farmers
Home Administration, and (a) at all times when the note is held by the Government, or in the event the Government should
assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals
and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or
other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement
herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by
Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the
Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower
contained herein or in any supplementary agreement, Borrower does hereby mortgage, assign, and warrant to the Gov-
ernment the following property situated in the State of Kansas, County(ies) of
__JOHNSON__                                                                                     :

Lot 31, MEADOWS 2ND, a subdivision in the City of Gardner, Johnson County, Kansas.

BOOK 5156 PAGE 577   VOL 4158 PAGE 58

FmHA 427-1 KS (Rev. 3-90)

Exhibit B

STATE OF KANSAS )ss
COUNTY OF JOHNSON )ss
FILED FOR RECORD

93 NOV 24  P 4:38

DAVID L. BAUMANN
REGISTER OF DEEDS

REGISTRATION FEE

NO TAX

REGISTER OF DEEDS
JOHNSON COUNTY KANSAS

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto  and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

BORROWER for Borrower's self, Bonower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

BOOK **5156** PAGE **578**

VOL **4158** PAGE **59**

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government–whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights inchoate or consummate, of descent, dower and curtesy.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for its sale or rental, or will otherwise make unavailable or deny said property, to anyone because of race, color, religion, sex, national origin and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on said property relating to race, color, religion, sex, or national origin.

(21)  Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1, part C, bit M.

VOL 4158 PAGE 60

(22)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Topeka, Kansas   66683, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this _____24th_____ day

of ___NOVEMBER___ , 19 93

_Valeda S McReynolds_                      _Valeda S McReynolds_ (SEAL)
                                          VALEDA S. MC REYNOLDS

_Valeda M Spencer_                         X _Valeda M Spencer_ (SEAL)
                                          VALEDA M. SPENCER

STATE OF KANSAS, COUNTY OF JOHNSON: ss:
On this 22nd day of July 1994, before me a Notary Public personally appeared VALEDA S. MCREYNOLDS and VALEDA M. SPENCER to me known to be the identical persons named in and who executed the foregoing instrument and acknowledged that they executed the same as their voluntary act and deed.
                               _John E. McNett_
                               John E. McNETT

Appointment expires 9-2-96
STATE OF KANSAS                                    ACKNOWLEDGMENT

COUNTY OF ___JOHNSON___ } ss:

On this ___24th___ day of ___NOVEMBER___ A.D., 19 ___, before me _____

_A Notary Public_ _____ personally appeared
            (insert title of officer taking acknowledgment)

___VALEDA S. MC REYNOLDS___ and ___VALEDA M. SPENCER___
to me known to be the identical person(s) named in and who executed the foregoing instrument and acknowledged that

___THEY___ executed the same as ___THEIR___ voluntary act and deed.

                               _John E. McNett_
                               JOHN E. MC NETT              Notary Public.

(SEAL)

My appointment expires ___9-2-96___

REGISTRATION FEE                    STATE OF KANSAS } ss
Amount of indebtedness $_____    COUNTY OF JOHNSON
Fee $_____ Pa _____            FILED FOR RECORD
day of ___NO TAX___ 19            1997 APR 10 P 3:55.9
Registration No. _____
REGISTER OF DEEDS                  SARA F. ULLMANN
JOHNSON COUNTY, KANSAS             REGISTER OF DEEDS

ORIGINAL COMPARED WITH RECORD

                                   BOOK 5156 PAGE 580
                                   VOL 4158 PAGE 61
                                   *U.S. GPO: 1990-766-578

6 DEC 1993

FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

Subsidy Repayment Agreement

Date of Note 11-24-93 Amount of Note 73,500.00 Date of mortgage 11-24-93

Date of Note _____ Amount of Note _____ Date of mortgage _____

Type of assistance:                          1. Interest credit /X/
                                             2. Homeownership Assistance
                                                Program / /

Address of Property: 317 Colleen Drive

                     Gardner, KS 66030

BORROWER: Valeda S. McReynolds

CO-BORROWER: Valeda M. Spencer

1    This agreement entered into pursuant to 7 CFR 1951-I, between the United
States of America, acting through the Farmers Home Administration (FmHA)
(herein called "the Government") pursuant to section 521 of Title V of the
Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears
above (herein sometimes referred to as "borrower"), supplements the note(s)
from borrower to the Government as described above, and any promissory
note(s) for loans made to borrower in the future by the Government.
Such future notes, when executed, will be listed below the signature line
of this Subsidy Repayment Agreement.

2    I (we) agree to the conditions set forth in this agreement for the
repayment of the subsidy granted me (us) in the form of interest credits
or Homeownership Assistance Program (HOAP) subsidy (hereinafter called
"subsidy").

3    I (we) agree that the real property described in the mortgage(s)
listed above is pledged as security for repayment of the subsidy received
or to be received.  I (we) agree that the subsidy is due and payable upon
the transfer of title or non-occupancy of the property by me (us).  I
(we) understand that the real estate securing the loan(s) is the only
security for the subsidy received.  I (we) further understand that I (we)
will not be required to repay any of the subsidy from other than the value
(as determined by the Government) of the real estate, mortgaged by myself
(ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.

(9-27-79)  SPECIAL P                                      Exhibit C

FmHA Instruction 1951-I
Exhibit A
Page 2

4    I (we) understand that so long as I (we) continue to own the property
and occupy the dwelling as my (our) residence, I (we) may repay the principal
and interest owed on the loan and defer repaying the subsidy amount until
title to the property is conveyed or the dwelling is no longer occupied by
me (us).  If such a request is made, the amount of subsidy to be repaid
will be determined when the principal and interest balance is paid.  The
mortgage securing the FmHA RH loan(s) will not be released of record until
the total amount owed the Government has been repaid.

5    I (we) agree that Paragraph 6 of this agreement is null and
void should the property described in the mortgage(s) be voluntarily
conveyed to the Government or liquidated by foreclosure.

6    When the debt is satisfied by other than voluntary conveyance of the
property to the Government or by foreclosure, I (we) agree that sale
proceeds will be divided between the Government and me (us) in the
following order:

   (a)  Unpaid balance of loans secured by a prior mortgage as well as
   real estate taxes and assessments levied against the property which
   are due will be paid.

   (b)  Unpaid principal and interest owed on FmHA RH loans for the
   property and advances made by FmHA which were not subsidy and are
   still due and payable will be paid to the Government.

   (c)  I (we) will receive from the sale proceeds actual expenses
   incurred by me (us) necessary to sell the property.  These may include
   sales commissions or advertising cost, appraisal fees, legal and
   related costs such as deed preparation and transfer taxes.  Expenses
   incurred by me (us) in preparing the property for sale are not allowed
   unless authorized by the Government prior to incurring such expenses.
   Such expenses will be authorized only when FmHA determines such expenses
   are necessary to sell the property, or will likely result in a return
   greater than the expense being incurred.

   (d)  I (we) will receive the amount of principal paid off on the
   loan calculated at the promissory note interest rate.

   (e)  Any principal reduction attributed to subsidized interest
   calculations will be paid to the Government.

   (f)  I (we) will receive my original equity which is the difference
   between the market value of the security, as determined by the
   FmHA appraisal at the time the first loan subject to recapture of
   subsidy was made, and the amount of the FmHA loan(s) and any
   prior lien.  This amount is 0.00          and represents
        0.0000   percent of the market value of the security.  (The

FmHA Instruction 1951-I
Exhibit A
Page 3

percent is determined by dividing my (our) original equity by
the market value of the security when the loan was closed.) The
dollar amounts and percent will be entered at the time this agreement
is signed by me (us) and will be part of this agreement.

(g) The remaining balance, after the payments described in (a) thru (f)
above have been paid is called value appreciation. The amount of
value appreciation to be paid to the Government, in repayment or
the subsidy granted, is the lesser of (1) the full amount of the subsidy or
(2) an amount determined by multiplying the value appreciation by the
appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 40 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h) I (we) will receive the amount of value appreciation less the
amount paid the Government as determined in (g) above. I (we) will
also receive an additional amount in proportion to my original equity
by reducing the amount of value appreciation due to the Government by
the percent of my (our) original equity as shown in (f) above.

(i) If I (we) am the recipient of HOAP, the amount of value appreciation
to be recaptured will be calculated as if I (we) had paid 1 percent
interest on the loan, unless the average interest rate paid by me (us)
was greater than 1 percent. In such cases it will be determined based
on the average interest rate paid by me (us).

(j) If this agreement is for a subsequent loan(s) only, the amount
of repayment determined in (g) above will be reduced by the following
percent:____NA____. This percent will be determined by dividing the
amount of the loan(s) subject to recapture by the total outstanding
RH debt. This percentage will be entered at the time I (we) sign this
agreement.

(k) If this agreement is for more than one loan that is subject to
recapture, the subsidy repayment computations will be based on the total
subsidy granted on all loans.

(9-27-79) SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 4


7    When a FmHA RH loan is repaid by other than foreclosure, voluntary conveyance, or sale of property, the amount of subsidy to be repaid the Government will be determined in the same manner as described in paragraph 6 of this Exhibit but based on the appraised value determined by FmHA instead of sales price. In such cases, the subsidy due the Government will remain a lien on the property until paid. It must be paid upon non occupancy, sale, or transfer of title to the property.

8    I (we) have read and agree to the provisions of this agreement.


_____ Borrower
Valeda S. McReynolds
_____ Co-Borrower
Valeda M. Spencer
11-24-93
    Date signed


Accepted and Agreed to
By _____ (FmHA Official)
    Randall D. Campbell
    County Supervisor       (Title)

    11-24-93
      Date


oOo

*Ro3*

## REAMORTIZATION AGREEMENT

Account Number                              Effective Date
                                            September 24, 2014

The United States of America, acting through the Rural Housing Service,
United States Department of Agriculture (Lender), is the owner and
holder of a promissory note or assumption agreement (Note) in the
principal sum of $     73500.00, plus interest on the unpaid principal of
  6.50000% per year, executed by VALEDA S MCREYNOLDS _____ and
VALEDA M SPENCER _____, (Borrower) dated November 24, 1993
and payable to the order of the Lender.  The current outstanding balance
includes unpaid principal, accrued unpaid interest, unpaid advances and
fees.  The total outstanding balance is $    65403.70.

In consideration of the reamortization of the note or assumption
agreement and the promises contained in this agreement, the outstanding
balance is capitalized and is now principal to be repaid at  6.50000%
per annum at $     649.37 per month beginning   October 24, 2014 and on
THE 24th DAY OF each succeeding month until the principal
AND INTEREST ARE PAID, EXCEPT THAT THE final installment of the
entire debt, if not paid sooner, will be due and payable on
 November 24, 2026.

If the outstanding loan balance prior to reamortization was reduced
by a payment which was later determined to be uncollectible, Rural
Housing Service will charge the account with an amount equal to the
uncollectible payments.  This amount is due and payable on the
effective date it is charged to the account and may accrue interest
at the promissory note rate.

Subject to applicable law or to a written waiver by Lender, Borrower
shall pay to lender on the day monthly payments are due under the Note,
until the Note is paid in full, a sum ("Funds") for : (a) yearly taxes
and assessments which may attain priority over Lender's mortgage or deed
of trust (Security Instrument) as a lien on the secured property
described in the Security Agreement (Property); (b) yearly leasehold
payments or ground rents on the Property, if any; (c) yearly hazard or
property insurance premiums; and (d) yearly flood insurance premiums, if
any.  These items are called "Escrow Items."  Lender may, at any time,
collect and hold funds in an amount not to exceed the maximum amount a
lender for a federally related mortgage loan, may require for Borrower's
escrow account under the federal Real Estate Settlement Procedures Act
of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq.
("RESPA"), unless another law or federal regulation that applies to the
funds sets a lesser amount.  If so, Lender may, at any time, collect and
hold funds in an amount not to exceed the lesser amount.  Lender may
estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise
in accordance with applicable law.

123456789012 192120000

Exhibit D

The funds shall be held by a federal agency, including Lender, or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits the Lender to make such charge. However, Lender may require borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the funds.

Lender shall give to borrower, without charge, an annual accounting of the funds, showing credits and debits to the funds and the purpose for which each debit to the Funds was made. The funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Unless changed by this agreement, all of the terms of the note or assumption agreement or the instruments that secure them, remain unchanged.

Upon default in the payment of any one of the above installments or failure to comply with any of the conditions and agreements contained in the above-described note or assumption agreement or the instruments securing it, the Lender, at its option may declare the entire debt immediately due and payable and may take any other action authorized to remedy the default.

_____ Date _____
Borrower

_____ Date _____
Borrower